IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM G. CREASY, | ) |
| Petitioner, | ) |
| v. | ) Case No. 3:22-cv-00033 |
| | ) Judge Trauger |
| MARTIN FRINK, Warden,[1] | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

William Creasy, an inmate at the Trousdale Turner Correctional Complex (TTCC) in Hartsville, Tennessee, filed his pro se habeas corpus petition under 28 U.S.C. § 2254 on January 19, 2022. (Doc. No. 1.) By order entered February 24, 2022, the court found that the petition contained at least one colorable claim and directed the State to respond. (Doc. No. 6.) The State thereafter requested an extension of time to file its response on behalf of Warden Frink, which the court granted on March 28, 2022, resulting in a new response deadline of April 25, 2022. (Doc. No. 8.)

Also on March 28, the court received three filings from the petitioner: a Motion for a Temporary Restraining Order (TRO) and a Preliminary Injunction (Doc. No. 9); a Memorandum of Law in support of the Motion (Doc. No. 10); and the petitioner's sworn Declaration in support of the Motion (Doc. No. 11). For the reasons given below, the petitioner's Motion for a TRO and a Preliminary Injunction (Doc. No. 9) is **DENIED**.

---

[1] Repeating a misspelling of the respondent's name in the petitioner's pro se filings, the court's prior orders identified the respondent as "Warden Martin Fink." As indicated in counsel's filings (Doc. No. 4, 7), the respondent's last name is in fact "Frink," not "Fink."

# I. BACKGROUND

In this action, the petitioner challenges the constitutionality of his April 4, 2019 conviction and sentence for three crimes to which he pled guilty. (Doc. No. 1 at 1.) For those crimes (evading arrest in a motor vehicle, reckless endangerment, and theft over $2,500), the petitioner was sentenced to "16 years at 45% on Comm[unity] Corr[ections]," according to the petition. (*Id.*) The petitioner alleges that, on February 7, 2019, he rejected the State's offer of "10 years to serve" and instructed his counsel to approach the assistant district attorney with an argument that his charge of "Theft over 2500 should be a Joyride," and a request to see the "Dash-Cam [footage] said to be in [his] discovery." (*Id.* at 2.) When counsel refused these and other requests, telling the petitioner that he could not get the dashcam video to play, the petitioner informed counsel that he was fired and demanded to speak to the judge. (*Id.*)

The petitioner was brought to the courtroom of Sumner County Judge Dee Gay at 5:00 pm on February 7, 2019, when he presented an oral motion to relieve counsel so he could represent himself and assert his speedy trial rights. (*Id.*) The petitioner's counsel and the assistant district attorney were present at the hearing. Judge Gay denied these motions but asked why the dashcam video could not be reviewed, in response to which the assistant district attorney advised as follows: "Something is wrong with it. When placed in DVD player and play is pressed it's like watching a blank tape[.] Nothing is on it." (*Id.*) Judge Gay then spoke harshly to the petitioner, and abruptly ended the hearing after the assistant district attorney interrupted the petitioner's argument to state that it was late and she needed to leave to pick up her daughter. (*Id.*)

The petitioner was not returned to court until 9:00 am on April 4, 2019, when he met his counsel and informed him that, even though he was merely joyriding and "wasn't running [from] the police," he would accept a 3-year sentence but needed to be home because his father was sick

and was scheduled to have a leg amputated. (*Id.* at 2–3.) At 4:30 pm, counsel returned to the petitioner with the assistant district attorney's counteroffer of "16 years at 45% on Community Corrections and [he] can go home." (*Id.* at 3.) When the petitioner objected to that proposal, counsel advised him that he was surprised that the offer included service on Community Corrections, but that the petitioner was free to reject it if he wanted to go to trial. (*Id.*) When the petitioner asked counsel if he had seen the dashcam video, counsel said, "Oh yeah I just saw it[,] a jury will convict you." (*Id.*) The petitioner accepted the plea offer based on counsel's statement about the dashcam video, but when he subsequently mentioned "the tape," counsel said, "What tape?" (*Id.*) The petitioner cites this response and the look on counsel's face as proof that counsel lied about having viewed the dashcam video. (*Id.*) He claims that "[t]hey used my dad being sick to get me to take what I took," that the assistant district attorney was subsequently fired, and that, "[i]f given all my discovery I'm not guilty of more than leaving the scene of an accident and then 2 weeks later a joyride." (*Id.*)

The petitioner claims that the transcript of his February 7, 2019 hearing before Judge Gay is fraudulent because it incorrectly refers to the assistant district attorney requesting an end to the hearing at a time when the petitioner was outside the courtroom. (*Id.* at 4.) He claims that he "was kidnapped on Feb-7-2019 and held hostage until 4-4-2019 when [he] accepted their terms of negotiation." (*Id.*) The petitioner requests "immediate relief from illegal confinement" and that his sentence be voided. (Doc. No. 1 at 4, 18.)

Attached to the petition is a trial court order dismissing the petitioner's untimely petition for post-conviction relief, in which the state court recounts the following procedural history:

> Petitioner pled guilty to the original charges of Reckless Endangerment, Evading Arrest Risk of Death or Injury – Vehicle Involved, Evading Arrest, and Theft under $2,500 on April 4, 2019, with an effective sentence of sixteen (16) years at forty-five percent (45%) – all on Community Corrections supervision.

3

> On February 13, 2020, the Petitioner agreed to serve his original sentence for violating conditions of his supervision after denying entry to his home while on Community Corrections to the Macon County Sheriff's Office conducting an ongoing investigation, then later leaving the state without permission. He also had picked up other charges that were pending in this court.

(Doc. No. 1 at 20.) It thus appears that the petitioner has been serving his sentence of incarceration in a Tennessee Department of Correction facility since agreeing to this arrangement on February 13, 2020.

## II. MOTION FOR TRO AND PRELIMINARY INJUNCTION

### A. Petitioner's Filings

In his TRO Motion, the petitioner seeks emergency injunctive relief "[b]ecause of the grounds listed in [the] Petition and the statement of facts that back them up," and asks to be released from custody in order to avoid "suffering irreparable harm and future violation of [his] Constitutional rights" while waiting for "the final disposition of the case." (Doc. No. 9 at 1.) He specifically refers the court to his petition and other pleadings in support thereof "as a declaration of facts," and states that he is "in fear for [his] life . . . at the worst prison in Tennessee." (*Id.* at 2.) He therefore seeks his "freedom [by] way of GPS ankle monitor and return to [his] home[.]" (*Id.*)

In his supporting Memorandum, the petitioner argues that, because he is likely to win habeas relief in this case, it would be a violation of his Eighth Amendment right to be free from cruel and unusual punishment if he were required to serve another day in prison after notifying the court of the circumstances that led to his incarceration. (Doc. No. 10 at 1.) He claims that the balance of hardships favors injunctive relief, that he is likely to succeed on the merits, and that he will be fully vindicated when all audio and video footage is reviewed. (*Id.* at 1–2.)

In his supporting Declaration, the petitioner avers that his sentence is illegal, and that when he asked to see his discovery, his "wife and brother were arrested and threatened with prosecution

4

unless [he] accept[ed] the plea agreement offered on Feb-13-2020." (Doc. No. 11 at 1.) He states that he has "never seen one piece of evidence a crime [he has] been convicted of was ever committed," but has found out that Judge Gay is the chair of the Tennessee Board of Judicial Conduct (TBJC), and that the TBJC "looks out" for the corporation that operates TTCC, CoreCivic, Inc., and vice versa. (*Id.* at 2, 3.) The petitioner reiterates his demand for "immediate release from illegal confinement by TRO and . . . a[n] emergency hearing be set for preliminary injunction," and asks that he be free to "go home pending final disposition of all claims." (*Id.* at 3.) He states that an officer at TTCC, Captain Porter, began verbally harassing him around Christmas of 2021 and ultimately took his television. (*Id.*) He asserts that he fears for his life and does not feel safe, though he is not afraid of other inmates. (*Id.*) He concludes his Declaration with the following summary of his concerns:

> I'm a[n] unaffiliated white guy in the worst pod in the worst prison. My points are high and they got me as having escapes on my record and I've never even tr[i]ed [to] escape but they won't fix it. … I've been treated unfairly and I'm uncomfortable here and I wouldn't doubt Dee Gay would[ ] send someone up here to kill me.
>
> I'll wear a[n] ankle monitor whatever but, I'm innocent and so far it's been 3 years and I've never seen nothing to even make me think a crime was committed. Please order TRO and my release pending outcome.

(*Id.* at 4.)

### B. Analysis

In determining whether to issue a temporary or preliminary injunctive order under Federal Rule of Civil Procedure 65, a district court ordinarily weighs the following four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Wilson v. Williams*, 961 F.3d 829, 836

(6th Cir. 2020) (quoting *Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015)); *see Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (noting that the same four factors apply regardless of whether the injunctive relief sought is a temporary restraining order or a preliminary injunction). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (internal quotations omitted). However, where a TRO is sought, "although some courts would examine [all] four factors required for issuance of a preliminary injunction, a focus on the irreparability and immediacy of harm is all that is required." *Appliancesmart, Inc. v. Dematteo*, No. 2:18-CV-1729, 2018 WL 6727094, at *2 (S.D. Ohio Dec. 21, 2018) (internal quotation marks and citation omitted)).

Here, although the petitioner frames his Motion as one seeking both emergency and preliminary injunctive relief under Rule 65—pursuant to which the court must analyze the TRO request by assessing the petitioner's showing of "immediate and irreparable injury," Fed. R. Civ. P. 65(b)(1)(A)—his Motion largely adverts to the facts alleged in his petition, such that the "claim of irreparable harm [made in his Motion] merely begs the question of whether he has suffered a constitutional deprivation." *Meneses v. Jennings*, No. 21-CV-07193-JD, 2021 WL 4804293, at *5 (N.D. Cal. Oct. 14, 2021) ("While there is no doubt that being detained without due process would be an irreparable harm, Cristobal simply assumes a deprivation to assert the resulting harm. That will not do."). Aside from the harm resulting from the fact of the petitioner's incarceration for two years and counting *if* the unconstitutionality of his conviction is assumed, his filings do not otherwise demonstrate that he is under any legitimate threat of imminent, irreparable harm from Captain Porter, Judge Gay, or anyone else. "A temporary restraining order is an extraordinary remedy that generally is reserved for emergent situations in which a party may suffer irreparable

6

harm during the time required to give notice to the opposite party or where notice itself may precipitate the harm." *Hacker v. Fed. Bureau of Prisons*, 450 F. Supp. 2d 705, 710 (E.D. Mich. 2006). Having been imprisoned for two years already, "[c]ontinued detention during the pendency of Petitioner's habeas petition . . . does not demonstrate that the harm is 'certain and great and of such imminence that there is a clear and present need for equitable relief.'" *Abi v. Barr*, Civ. No. 19-1033 (PAM/TNL), 2019 WL 2463036, at *2 (D. Minn. June 13, 2019) (quoting *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011)). Furthermore, insofar as the petitioner seeks to preliminarily enjoin the State from continuing to incarcerate him, "[a] preliminary injunction is also inappropriate where there is an adequate remedy at law, and here that remedy is the petition for writ of habeas corpus"; accordingly, analysis at this early stage of the petitioner's likelihood of success on the merits is both premature and unnecessary. *Id.* The petitioner is not entitled to relief under Rule 65.

Nonetheless, the court takes guidance from another court's consideration of a similar matter in a similar posture. As found by the court in *Rowell v. Palmer*, a habeas petitioner's motion for release from prison pending the disposition of his habeas corpus petition, filed under the standard for obtaining preliminary injunctive relief, may properly be construed as "a request for enlargement on bail pending resolution of the petition," to be "evaluate[d] . . . under the applicable standard for that type of motion rather than the preliminary-injunction standard." *Rowell*, No. 3:10-CV-00098-LRH, 2011 WL 3502371, at *1 (D. Nev. Aug. 9, 2011). The petitioner's request for his "freedom [by] way of GPS ankle monitor and return to [his] home" (Doc. No. 9 at 2) correlates with the interpretation of his TRO motion as a motion seeking release on bond.

As Judge Crenshaw explained in a recent opinion,

A federal district court has "inherent authority" to grant bond to a habeas petitioner while his petition is under review. *Nash v. Eberlin*, 437 F.3d 519, 526, n.10 (6th

7

> Cir. 2006). But that authority is narrow. "Since a habeas petitioner is appealing a presumptively valid state court conviction, both principles of comity and common sense dictate that it will indeed be the very unusual case where a habeas petitioner is admitted to bail prior to a decision on the merits in the habeas case." *Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993). Before and during trial, the accused enjoys a presumption of innocence, and bail is normally granted. *Glynn v. Donnelly*, 470 F.2d 95, 98 (1st Cir. 1972). However, the presumption fades upon conviction, with the State acquiring a substantial interest in executing its judgment. *Id.* This combination of factors dictates a "formidable barrier" for prisoners seeking interim release while they pursue their collateral remedies. *Id.*
>
> "In order to receive bail pending a decision on the merits, prisoners must be able to show not only a substantial claim of law based on the facts surrounding the petition but also the existence of 'some circumstance making [the motion for bail] exceptional and deserving of special treatment in the interests of justice.'" *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990) (quoting *Aronson v. May*, 85 S. Ct. 3, 5 (1964) (Douglas, J., in chambers)). Even where the Court concludes that a petition raises a substantial question of law, "[m]erely to find that there is a substantial question is far from enough." *Lee*, 989 F.2d at 871 (quoting *Glynn*, 470 F.2d 95, 98).

*Jones v. Perry*, No. 3:16-cv-02631, 2020 WL 2933277, at *2–3 (M.D. Tenn. June 3, 2020), *appeal dismissed*, No. 20-5643, 2020 WL 7385249 (6th Cir. Oct. 21, 2020).

In reference to a state inmate's burden in seeking bail pending review of his federal habeas petition, the Sixth Circuit Court of Appeals observed that "[i]t will be the rare occasion when an inmate will be able to satisfy this standard." *Pouncy v. Palmer*, 993 F.3d 461, 463 (6th Cir. 2021). Without question, the motion before this court does not present such rare occasion for an award of bail and release to home confinement pending the outcome of the petitioner's habeas case. The court at this point has merely identified one colorable claim asserted in the petition, the claim of ineffective assistance of trial counsel. (*See* Doc. No. 6 at 1.) Even accepting as true the petitioner's allegation that his counsel misrepresented the contents of any dashcam video footage he viewed (despite the petitioner's claim that such video, if it existed, could not have shown him evading arrest since he did not attempt to run from the police), and accepting that a substantial question of law is presented by his claim that he only pled guilty because of that misrepresentation, the

8

petitioner has merely presented a claim that his plea was not voluntary. In asserting this common habeas claim, he has not shown any "circumstance making [his motion for bail] exceptional and deserving of special treatment in the interests of justice." *Dotson*, 900 F.2d at 79 (citation and internal quotation marks omitted).

Finally, in considering any request for release on bond, the court properly "takes into consideration Petitioner's prior conduct with respect to bond," *Jones*, 2020 WL 2933277, at *4—which in this case includes the petitioner's 2019 violations of supervised release to Community Corrections when he refused law enforcement's request for entry into his residence, left the state without permission, and incurred other criminal charges. (*See* Doc. No. 1 at 20.) Given this history, the petitioner's request for conditional release during the pendency of this case is not well taken.

## III. CONCLUSION

This habeas case will proceed on the usual track, without any hearing on the petitioner's Motion for a Temporary Restraining Order and a Preliminary Injunction (Doc. No. 9). That Motion, whether construed as seeking a TRO, preliminary injunction, or release on bond, is **DENIED**.

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge