IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM G. CREASY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 3:22-cv-00033 |
| | ) Judge Trauger |
| MARTIN FRINK, Warden, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

William Creasy, an inmate at the Trousdale Turner Correctional Complex (TTCC) in Hartsville, Tennessee, initiated this action by filing a pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (Doc. No. 1.) In response, the respondent has filed a Motion to Dismiss the Petition based on the statute of limitations (Doc. No. 17), supported by a memorandum of law (Doc. No. 18) and the record of proceedings in state court. (Doc. No. 16.) The petitioner filed a response to the Motion to Dismiss (Doc. No. 19), followed by additional filings and motions unrelated to the statute of limitations defense asserted in the respondent's motion.

The Motion to Dismiss is now before the court for disposition. Though the petitioner requests an evidentiary hearing (Doc. No. 20), the record before the court demonstrates that an evidentiary hearing is not needed to resolve the Motion to Dismiss. *See Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)) (evidentiary hearing not required "if the [state court] record refutes the applicant's factual allegations or otherwise precludes habeas relief"); *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (same). As explained below, this action is untimely and will be dismissed on that basis.

# I. BACKGROUND

The petitioner challenges the constitutionality of his April 4, 2019 conviction and sentence in Sumner County Criminal Court for three crimes to which he pled guilty. (Doc. No. 1 at 1.) For those crimes (evading arrest in a motor vehicle, reckless endangerment, and theft over $2,500), the petitioner was sentenced to 16 years at 45% in the Tennessee Department of Correction (TDOC), suspended to placement on Community Corrections. (*Id.*; *see also* Doc. No. 16-1 at 74–84.) The petitioner did not seek to withdraw his guilty plea, nor did he appeal his conviction in state court.

In August and September of 2019, the petitioner was accused of violating the terms of his Community Corrections placement by (1) refusing entry to a law enforcement officer visiting his residence, (2) leaving the state, and (3) incurring additional criminal charges in Tennessee and Kentucky. (Doc. No. 16-1 at 97–100.) The petitioner pled guilty to the charged violations and agreed to serve the remainder of his original sentence in TDOC custody on February 13, 2020 (*id.* at 101–03), as reflected in the order entered March 6, 2020. (*Id.* at 108–09.)

From June 2020 to July 2021, the petitioner submitted a variety of pro se motions and letters to the trial court related to the outcome of his case. (*Id.* at 110–167.) On April 12, 2021, he filed a petition for post-conviction relief, which the trial court dismissed on statute of limitations grounds. (Doc. No. 1 at 20–21.) The petitioner attempted to institute proceedings related to his Sumner County case in this court in July 2021, but ultimately withdrew his filing without payment of the filing fee in November 2021, so that he could return to state court. *See Creasy v. Sumner Cnty. Crim. Ct.*, No. 3:21-cv-00536 (M.D. Tenn. Nov. 30, 2021) (Richardson, J.). On November 22, 2021, the petitioner filed a motion for sentence review in the Tennessee Supreme Court. (Doc. No. 16-2.) In an order entered two days later, the Tennessee Supreme Court denied review for lack

of appellate jurisdiction, "[b]ecause no post-conviction challenge was litigated in the lower courts." (Doc. No. 16-3.)

The petitioner then returned to federal court, seeking relief under Section 2254. Under the prison mailbox rule, the instant case was filed on December 21, 2021, the date the petitioner declared he handed the Petition over to prison authorities for mailing. (Doc. No. 1 at 18); *see* Rule 3(d), Rules Gov'g § 2254 Cases; *Pratt v. Kowalski*, No. 19-1142, 2019 WL 7938069, at *3 (6th Cir. Nov. 13, 2019) (stating that "a habeas petition is deemed filed on the date that it is handed to prison authorities for mailing") (citations omitted).

## II. ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104–132, 110 Stat. 1214 (1996), sets a one-year statute of limitations for state prisoners seeking federal habeas corpus relief, which "run[s] from the latest of":

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *see Holland v. Florida*, 560 U.S. 631, 635 (2010).

Here, as in the majority of cases, the statute began to run when the judgment of conviction became final, pursuant to Section 2244(d)(1)(A). The petitioner did not attempt to withdraw his April 4, 2019 guilty plea or otherwise challenge the judgment of conviction entered on that date.

3

Therefore, the judgment against him became final thirty days later, on May 4, 2019. *See State v. Green*, 106 S. W. 3d 646, 650 (Tenn. 2003) (finding that, in Tennessee, "a judgment of conviction upon a guilty plea becomes a final judgment thirty days after entry," allowing that time for a defendant who waives his right to appeal to file a motion to withdraw the previously entered plea). The running of the limitations period is counted from the following day, May 5, 2019. *See* Fed. R. Civ. P. 6(a)(1)(A) (when computing a time period "stated in days or a longer unit of time . . . exclude the day of the event that triggers the period"); *Bronaugh v. Ohio*, 235 F.3d 280, 284 (6th Cir. 2000) (applying Rule 6(a)'s standards for computing periods of time to habeas filing). Therefore, unless the statute's running was tolled or the statutory clock was reset, the time for filing a federal habeas petition expired on May 5, 2020, some nineteen months prior to this action's filing.

The statutory clock was not reset by the February 2020 revocation of the petitioner's Community Corrections placement. Although state law would have permitted resentencing at that time, *see* Tenn. Code Ann. § 40-36-106(e)(4) (authorizing resentencing "for any period of time up to the maximum sentence provided for the offense committed" when sentence to community-based program is revoked), the record reflects the reinstatement of the petitioner's original prison sentence rather than resentencing. (*See* Doc. No. 16-1 at 108–09.) And, while exposure to the possibility of resentencing is enough to trigger a right to seek post-conviction relief in state court, *see Grant v. State*, No. M2007-00052-CCA-R3-PC, 2008 WL 4169985, at *3–4 (Tenn. Crim. App. Sept. 8, 2008) (applying, *e.g.*, *Carpenter v. State*, 136 S. W. 3d 608, 611 (Tenn. 2004)), a new clock does not start under AEDPA unless the revocation of Community Corrections actually results in a new sentence. *Crangle v. Kelly*, 838 F.3d 673, 678 (6th Cir. 2016) ("[B]ecause the sentence is the judgment, a new sentence not only permits a challenge to either the new sentence

4

or the undisturbed conviction, but also restarts AEDPA's one-year window to challenge that judgment.") (internal citation and quotation marks omitted). Because the petitioner was not given a new sentence when his Community Corrections placement was revoked but was merely "ordered to serve the balance of his original sentence" of 16 years at 45% in TDOC custody (Doc. No. 16-1 at 108–09), the revocation proceedings do not factor into the timeliness determination.

As to tolling, under 28 U.S.C. § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted toward" the limitations period. The petitioner's various pro se, state court motions for relief following his incarceration were not treated by the state courts as applications for post-conviction or other collateral review (*see* Doc. No. 16-3), nor were any of them filed by May 5, 2020; the first pro se motion, for "Early Release," was filed in June 2020. (*Id.* at 110.) Though the petitioner did eventually file a post-conviction petition in state court on April 12, 2021, his petition was dismissed as untimely. (Doc. No. 1 at 20–21.) Only "properly filed" applications "for post-conviction or other collateral review" toll AEDPA's statute of limitations. 28 U.S.C. § 2244(d)(2); *Davis v. Bradshaw*, 900 F.3d 315, 323 (6th Cir. 2018). "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings—including any state-imposed time limits. A state postconviction motion that a court cannot consider because the petitioner failed to include a timely claim is not 'properly filed,' for purposes of AEDPA's statutory tolling provision." *Davis*, 900 F.3d at 323–24 (quoting, *e.g.*, *Artuz v. Bennett*, 531 U.S. 4, 8 (2000)) (internal citations omitted). The petitioner therefore cannot benefit from statutory tolling under Section 2244(d)(2).

In addition to tolling under the statute, AEDPA's limitations period may be subject to equitable tolling in appropriate cases. *Holland*, 560 U.S. at 645–49. However, the doctrine of

5

equitable tolling is used sparingly and is typically applied "only when a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art*, 209 F.3d 552, 560–61 (6th Cir. 2000)). It is the petitioner's burden to show that he is entitled to equitable tolling, *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010), a burden he may carry by showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649; *see also Stiltner v. Hart*, 657 F. App'x 513, 520 (6th Cir. 2016).

The petitioner argues that he was prevented from pursuing post-conviction remedies on time because he was sent to state prison on March 16, 2020 and was almost immediately placed on lockdown due to COVID-19, which, along with prison understaffing, severely limited his access to the prison law library. (Doc. No. 19 at 1.) He further states that he would have filed for state post-conviction review immediately after being sentenced "[i]f [he] had known about post-conviction," asserting that he "filed what [he] could until [he] found out what [his] rights were and what post-conviction was." (Doc. No. 19 at 2.) But "ignorance of the law, including on matters such as the availability of state post-conviction remedies and the related statute of limitations, does not entitle [the petitioner] to equitable tolling." *Carter v. Phillips*, No. 20-6038, 2021 WL 867105, at *2 (6th Cir. Mar. 4, 2021), *cert. denied*, 142 S. Ct. 242 (2021). Neither does lack of access to the prison law library or other legal materials, *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 751 (6th Cir. 2011), especially where, as here, the petitioner was able to make a number of state court filings despite such lack of access. *See Faught v. Vantell*, No. 3:21-CV-321-TAV-DCP, 2022 WL 4137825, at *6 (E.D. Tenn. Sept. 12, 2022) (finding that lack of access to prison law library

during limitations period was not grounds for equitable tolling where petitioner was able to file "multiple subsidiary motions to the [state court]" during that time).

Even in cases where pandemic-related lockdowns were imposed at some point during the limitations period, "courts have rejected requests for equitable tolling . . . where there was no evidence the prisoner diligently pursued his right to file a [habeas] motion prior to the lockdown." *United States v. West*, 578 F. Supp. 3d 962, 966 (N.D. Ohio 2022) (citing cases). Here, the petitioner did not seek to challenge his April 2019 sentence while on Community Corrections, or during the time that followed his arrest for violating the conditions of his suspended sentence, but only after he had been remanded to TDOC custody in March 2020 (just as pandemic restrictions were being imposed) to serve the balance of his sentence. It thus appears that it was the revocation of his Community Corrections placement and remand to state prison that motivated the petitioner's efforts to win relief beginning in June 2020. (*Id.* at 110.) Under these circumstances—which show that the petitioner slept on his rights until deep into the limitations period when, due to his misconduct, the terms of his sentence became more onerous—equitable tolling of the statute of limitations is not warranted.

Finally, the petitioner does not raise "a convincing claim of actual innocence" of the charges of conviction, such that the court could reach the merits of his Petition despite its untimeliness. *McQuiggin v. Perkins*, 569 U.S. 383, 392–98 (2013) (allowing that actual innocence can operate in rare cases as an "equitable exception to § 2244(d)(1)," rather than grounds for tolling, in order to allow petitioner "to overcome expiration of the statute of limitations governing a first federal habeas petition"). The petitioner merely asserts that he is "not guilty" because he has "never seen any discovery that can prove any charge" of conviction. (Doc. No. 19 at 2.) This conclusion from allegedly insufficient discovery material is not the "convincing claim" envisioned

in *McQuiggin*, which requires a "credible showing" of "new evidence" of innocence to reach the merits of an untimely habeas petition. *Id.* at 392, 394–95 ("The miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted the petitioner.") (citation and internal quotation marks omitted); *see also Bousley v. United States*, 523 U.S. 614, 623 (1998) ("'[A]ctual innocence' means factual innocence, not mere legal insufficiency."). Further review of this time-barred Petition is thus unavailable.

### III. CONCLUSION

For the reasons stated above, the respondent's Motion to Dismiss (Doc. No. 17) is **GRANTED** and all other pending motions are **DENIED** as moot. In view of its untimely filing, this action is **DISMISSED**.

Because this constitutes a "final order adverse to" the petitioner, the court must "issue or deny a certificate of appealability." Habeas Rule 11(a). A certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where, as here, a habeas petition is "denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 253 (6th Cir. 2017) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Because reasonable jurists could not find it debatable that the court is correct in its procedural ruling under the circumstances presented here, the court **DENIES** a certificate of appealability in this case. The petitioner may, however, seek a certificate of appealability directly from the Sixth Circuit Court of Appeals. Fed. R. App. P. 22(b)(1).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge

9

Case 3:22-cv-00033   Document 26   Filed 11/08/22   Page 9 of 9 PageID #: 399